UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS MORAN and CAROL MORAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-1250 |
| ) | |
| ROGER D. STRATTON, a Police Officer of ) | |
| the City of Peoria, in his individual capacity, ) | |
| TERRY L. ESSER, a Police Officer of the City ) | |
| of Peoria, in his individual capacity, MICHAEL ) | |
| JOHNSON, a Police Officer of the City of ) | |
| Peoria, in his individual capacity, SERGEANT ) | |
| CONRAD HLAVACEK, a Police Officer of the ) | |
| City of Peoria, in his individual capacity, ) | |
| LIEUTENANT THOMAS LARSON, a Police ) | |
| Officer of the City of Peoria, in his individual ) | |
| capacity, STEVEN SETTINGSGAARD, Chief ) | |
| of Police, in his individual capacity, PATRICK ) | |
| PARSONS, Director of Human Resources of ) | |
| the City of Peoria, in his individual capacity, ) | |
| CITY OF PEORIA, an Illinois Local Govern- ) | |
| ment Entity, JAMES R. DENSON, and ) | |
| SARAH DENSON, ) | |
| ) | |
| Defendants. ) | |

## **O R D E R**

This matter is now before the Court on Motions to Dismiss by James and Sarah Denson, Sergeant Conrad Hlavacek, Officer Roger Stratton, Chief Steven Settingsgaard, and Patrick Parsons. For the reasons set forth below, Sergeant Hlavacek's Motion to Dismiss [#15] is GRANTED, and the Motions to Dismiss by the Densons [#9], Officer Stratton [#18], and Chief Settingsgaard and Parsons [#3] are DENIED.

**BACKGROUND**

At all relevant times, Plaintiffs Thomas and Carol Moran (the "Morans") resided at 4208 N. Timber Ridge Circle, in Peoria, Illinois.[1] James and Sarah Denson (the "Densons") owned the house located at 4215 Timber Ridge Circle, which is adjacent to the Morans' lot, and resided there with their adult daughter Jeniffer. This litigation arises out of an ongoing dispute between the Morans and the Densons over the boundary line between their properties.

During the course of this dispute, the Peoria Police were called on several occasions. Officer Roger Stratton responded on some of these occasions. The Morans contend that Officer Stratton was hostile to them and sided with the Densons. As a result, Thomas Moran complained to the Peoria Police Department and Officer Sammy Hoskins was sent to mediate the situation. Officer Hoskins suggested that the dispute be resolved by obtaining a survey of the property lines. Prior to September 24, 2005, the Morans retained a surveyor to determine the boundary line between the properties. The survey confirmed the boundary line in the Morans' favor.

On September 24, 2005, the Densons erected an orange string near the boundary line between the two properties, creating the false impression of a surveyor's line. The Densons or persons acting on their behalf then entered the Morans' property and began cutting down trees and digging post holes to erect a fence. The Morans instructed these people to leave their property and offered to show them the survey results establishing the boundary line in their favor. They refused to leave and

---

[1] For purposes of resolving these Motions, the allegations in the Complaint are presumed to be true.

continued their activities on the Morans' property.  The Morans took photographs of this activity.

At some point, Jeniffer Denson called the police.  Officer Stratton and Officer Terry Esser arrived as Carol Moran approached the orange string with a pair of scissors.  Officer Stratton instructed her not to use the scissors, refused to look at the survey and then falsely arrested her for criminal trespass.  Officer M. Johnson arrived shortly thereafter.  Carol Moran alleges that Officer Stratton used excessive force in the course of handcuffing her and also falsely arrested her for resisting arrest, despite his knowledge that she suffered from lupus and was recovering from abdominal surgery.  She further alleges that Officers Esser and Johnson failed to stop Officer Moran from arresting her without probable cause and also used excessive force against her in the course of forcing her into the paddy wagon.  Carol Moran was then taken to Methodist Medical Center, where Officers Stratton and Esser insisted on being present and observing her while she disrobed for examination by the emergency room personnel.

Thomas Moran filed a written complaint with the Peoria Police Department against Officers Stratton, Esser, and Johnson immediately after the incident.  On September 25, 2005, he contacted the police department to have an officer respond to the Densons once again trespassing on the Morans' property.  He spoke with Lieutenant Thomas Larson, who informed him that the police department would do nothing about the Densons' conduct as long as he was pursuing his complaint against Officers Stratton, Esser, and Johnson.

Thomas Moran was employed as physician assistant providing rehabilitation therapy for OSF Medical Center.  A substantial portion of his work involved treating

injured police officers. On September 26, 2005, Captain Shipp, who Moran dealt with on treatment involving Peoria police officers, called Moran and told him that they did not want Moran's complaint to become a big deal. Later that afternoon, Patrick Parsons ("Parsons"), Director of Human Resources for the City of Peoria, called Moran's supervisor at OSF and informed him that Moran would not be allowed to treat any City of Peoria police officer because of his pending complaint against Officers Stratton, Esser, and Johnson. Moran's supervisor complied with Parsons' directive and prepared a memorandum to that effect. This significantly limited Moran's practice.

Moran's complaint was assigned to Sergeant Conrad Hlavacek, an Internal Affairs Officer. Sergeant Hlavacek interviewed Carol Moran and found the complaint to be without merit, exonerating Officers Stratton, Esser, and Johnson. These findings were reviewed and approved by Chief Steven Settingsgaard.

On September 21, 2007, the Morans filed this Complaint alleging federal claims pursuant to 42 U.S.C. § 1983 and a state law claims. Carol Moran alleges: (1) the conduct of Officers Stratton, Esser, and Johnson violated her Fourth Amendment rights; (2) the conduct of Sergeant Hlavacek violated her Fourth Amendment rights; and (3) Chief Settingsgaard ratified the deprivation of her Fourth Amendment rights by approving the internal affairs investigation. Thomas Moran alleges: (1) the conduct of Lieutenant Lawson/Larson in refusing to respond to Moran's phone call for assistance was in retaliation for Moran's protected speech and therefore violated his First Amendment rights; (2) the conduct of Lieutenant Lawson/Larson deprived him of his right to petition his government for redress of grievances, thereby depriving him of one of the privileges and immunities of citizenship guaranteed by Article V, Section 2 of the

U.S. Constitution; (3) Chief Settingsgaard ratified Lieutenant Lawson/Larson's conduct; (4) Parsons directive that Moran not be allowed to treat any police officers because of his complaint was in retaliation for Moran's speech in violation of Moran's First Amendment, the Privileges and Immunities Clause, and the substantive and procedural due process clauses of the Fourteenth Amendment.  The Morans further assert a state law cause of action for trespass against the Densons.

Defendants have now moved to dismiss the Complaint on various grounds, each of which will be addressed in turn.  The motions are fully briefed, and this Order follows.

## LEGAL STANDARD

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief.  See Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993).  Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff.  See Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. V.

Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

## DISCUSSION

I.      The Densons

The Densons have moved to dismiss all or part of the state law trespass claim alleged against them. Specifically, they argue that ¶ 60 of the Complaint improperly seeks damages for mental distress. The Densons cite Braun v. Craven, 175 Ill. 401 (1898), and Allen v. Otis Elevator Company, 206 Ill.App.3d 173, 563 N.E.2d 826 (1st Dist. 1990), for the proposition that emotional distress damages are not recoverable for negligent acts. The Densons further contend that ¶ 5 of the prayer for relief improperly seeks an award punitive damages, as the allegations of trespass contained in the Complaint could have been negligent or unintentional conduct and punitive damages are not available for actions that constitute "mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence." Loitz v. Remington Arms Co., Inc., 138 Ill.2d 40 (1990); Kelsay v. Motorola, Inc., 74 Ill.2d 172 (1978).

The Morans agree that Illinois law does not allow damages for negligent emotional distress absent physical contact within a zone of danger. That being said, they respond that they have alleged more than a negligent trespass. Paragraphs 15-20 of the Complaint allege that the Densons intentionally crossed the boundary line repeatedly without permission, erected a string to give a false impression as to the location of the boundary line, began cutting down trees, and refused the Morans' requests to stop or look at their survey confirming the location of the property line.

Considered in the context of the remainder of the allegations, the Court agrees that the Complaint is sufficient to promote the reasonable inference that the Densons intentionally entered the Morans' land on more than one occasion despite their knowledge of the boundary line dispute or with reckless disregard for the Morans' property rights. It is not difficult to further infer that their actions were more than inadvertence, mistake, errors of judgment, or other conduct indicative of negligence. When viewed in the light most favorable to the Morans, the Court cannot find that they could prove no set of facts that would establish that the Densons' conduct was both intentional and malicious. Accordingly, the Densons' Motion to Dismiss or Strike must be denied.

## II.     Sergeant Hlavacek

Sergeant Hlavacek moves to dismiss the Fourth Amendment claim against him for failure to sufficiently allege his individual liability. He contends that the only allegations against him are that Thomas Moran filed a complaint against Officers Stratton, Esser, and Johnson that was ultimately assigned to him for investigation. Sergeant Hlavacek then interviewed Carol Moran, allegedly with full knowledge of the misconduct of Officers Stratton and Esser, and found the complaint to be without merit. This finding is further alleged to have been a ratification of the deprivation of Carol Moran's Fourth Amendment rights.

Sergeant Hlavacek argues that the allegations fail to demonstrate that he had personal involvement in or was personally responsible for Carol Moran's arrest, as conducting an internal investigation of a citizen complaint regarding officer conduct has nothing to do with an unreasonable seizure under the Fourth Amendment. He was not

present during the arrest. In fact, he did not become involved in investigating the citizen complaint until sometime after her arrest. Accordingly, since the arrest was already complete when he investigated and issued his report exonerating the officers, he could not have prevented, undone, or acquiesced in her arrest.

The Morans' response first argues that they have alleged "the elements of Section 1983 liability of municipalities for the excessive use of force by individual police officers established by the Supreme Court." (Response at 3) This argument is simply not responsive to the argument being made in the Motion to Dismiss, as municipal liability is separate and distinct from the individual capacity claim against Hlavacek. They then cite Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988), for the proposition that personal responsibility can be inferred if a defendant knows about the conduct and facilitates, approves, condones, or turns a blind eye to it for fear of what he might see. However, this proposition is in the context of establishing supervisory liability, and the Complaint is simply devoid of any assertion that Hlavacek had any supervisory authority over Officers Stratton, Esser, or Johnson. From there, the Morans leap to the assertion that "a policy maker with sufficiently culpable mens rea might be individually liable for devising policies that deprive persons of their Constitutional rights" before stating that Hlavacek participated in and furthered Chief Settingsgaard's deliberate indifference to the false arrest and excessive force by Peoria Police officers.

With all due respect, the Morans' explanation for why Hlavacek was personally responsible for the deprivation of Carol Moran's Fourth Amendment rights borders on incomprehensible. Hlavacek was not present during or immediately after the arrest and is not alleged to have been the policy making agent of the Police Department who

developed the alleged policy of deliberate indifference to the deprivation of Fourth Amendment rights that the Morans allege was a motivating factor in the deprivation of her rights.  Nor is there any claim in this case that Hlavacek supervised the arresting officers or was somehow part of a conspiracy among the other officers to violate Carol Moran's rights.

Liability under § 1983 requires direct, personal responsibility for the claimed deprivation of the constitutional right.  Wolff-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983); Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001).  While direct participation by the defendant is not always necessary, there must be at least a showing that: (1) the defendant failed to act or acted with deliberate indifference or a reckless disregard for plaintiff's constitutional rights, and (2) the conduct causing the constitutional deprivation occurred either at defendant's direction or with his knowledge or consent.  Maltby v. Winston, 36 F.3d 548, 559 (7th Cir. 1994).  The Morans have simply failed to allege that the purported false arrest and excessive force in this case occurred at Hlavacek's direction, with his knowledge of consent, or any other basis for the personal liability of Sergeant Hlavacek for the deprivation of Carol Moran's Fourth Amendment rights.  As the allegations contained in the Complaint are insufficient to raise the Morans' right to relief beyond a purely speculative level with respect to Sergeant Hlavacek, his Motion to Dismiss is therefore granted.  See Twombly, 127 S.Ct. at 1965.

III.   Officer Stratton

Officer Stratton seeks dismissal of the Fourth Amendment claim against him based on what he describes as "a series of conclusory allegations regarding Stratton's

purported knowledge of Carol Moran's medical condition, and his claimed 'deliberate indifference' to the plaintiffs' survey . . . ." Stratton contends that the allegations of the Complaint demonstrate that Carol Moran was on notice that her entry onto the Densons' claimed property was forbidden under 720 ILCS 5/21-3(a)(2)(b), as a trespass is committed when a person enters the property of another knowing such entry is forbidden or remains on the property after being told to leave. People v. Kraft, 277 Ill.App.3d 221, 225 (1st Dist. 1995). He further faults the Morans for failing to plead that Stratton should not have been misled by the orange tape placed in the yard.

     However, Stratton is demanding a level of specificity that is not required in federal notice pleading. Federal Rule of Civil Procedure 8(a) does not require a claimant to set forth a detailed statement of the claim, but rather only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Conley, 355 U.S. 41 (1957). A complaint need not plead legal theory, nor need it match facts to every element of a legal theory. Bennett v. Schmidt, 153 F.3d 516 (7th Cir. 1998). General allegations of elements consistent with a claim, unsupported by factual allegations in support, are sufficient to satisfy the "minimal requirements of federal notice pleading." Cook v. Winfrey, 141 F.3d 322, 328 (7th Cir. 1998).

     Stratton cites Ross v. Mauro Chevrolet, 369 Ill.App.3d 794 (1st Dist. 2006), for the proposition that police are entitled to act on information that may be inaccurate and let the courts determine whether the suspect is innocent. While this may be instructive in a case where the officer has no knowledge of which party in a dispute is correct and acts reasonably but mistakenly, that is not the situation alleged in the Complaint in this case. The Morans have pled allegations consistent with the claim that Stratton knew that the

Morans were in the right, could not reasonably have been misled by the orange tape, and either knew or should have known that Carol Moran was on her own property when he arrested her for trespass, which is the antithesis of trespassing and would negate any possible claim of probable cause.

The Complaint alleges that Stratton had been called to the house several times regarding the property line dispute. The Morans complained that he was hostile to them on these occasions and routinely took the Densons' side despite his knowledge that the City of Peoria Planning Department had confirmed the Morans' understanding of the location of the property line. Paragraph 17 promotes the reasonable inference that Stratton knew or should have known that Office Hoskins had been sent in to mediate the dispute and had recommended that it be resolved by a professional survey. A reasonable jury could also infer that Stratton was aware of the existence of the survey resolving the dispute in the Morans' favor and refused to consider it or demonstrated deliberate indifference to the existence of the survey and its results. This is sufficient to raise the Morans' right to relief beyond a speculative level, as it is possible that they could prove a set of facts consistent with the Complaint establishing that Stratton lacked probable cause to arrest Carol Moran for trespassing on her own property. Although the Morans' ability to ultimately prevail on a fully developed factual record is far from clear, the Court must conclude that dismissal of the Fourth Amendment false arrest claim would be premature at this stage of the litigation.

The same is true of the claim that Stratton and the other officers used excessive force in taking Carol Moran into custody. Where, as here, an excessive force claim arises in the context of the seizure of a free citizen, the claim is most properly

characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable. . . seizures." Graham v. Connor, 490 U.S. 386, 394 (1989). To properly state a claim, a plaintiff must establish that a seizure occurred and that the officer's use of force in effecting the seizure was unreasonable. United States v. Hernandez, 1997 WL 80916, *3 (N.D.Ill. Feb. 21, 1997). The reasonableness of an officer's use of force is to be judged from the perspective of a reasonable officer on the scene at the moment that the force was used. Graham, 490 U.S. at 396. Courts must consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., at 395; Lawrence v. Kenosha County, 391 F.3d 837, 843 (7th Cir. 2004).

     Here, there can be no dispute that there was a seizure of Carol Moran. Although the Complaint does not specify what type of force was used in placing her into handcuffs or putting her in the paddy wagon, it does allege that Officer Stratton was aware that Carol Moran had lupus and was recovering from surgery. The severity of the crime that she purportedly committed was minimal, and there is no assertion that she posed any danger or threat to the safety of the officers or that there were any exigent circumstances requiring immediate arrest. Despite this knowledge, he is alleged to have used excessive force while in the course of handcuffing her and forcing her into the paddy wagon while she was incapacitated. This is marginally sufficient for purposes of federal notice pleading. Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 475-76 (7th Cir. 1997).

Stratton also asserts that he is entitled to qualified immunity. Police officers have qualified immunity when they have an objectively reasonable belief that there was probable cause for the arrest. Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); Sornberger v. City of Knoxville, 434 F.3d 1006, 1013 (7th Cir. 2006). However, an officer "may not close his or her eyes to facts that would help clarify the circumstances of an arrest." Id., at 1015. As that is precisely what can reasonably be inferred from the allegations of the Complaint in this case, the Court must conclude that a determination on Stratton's claim of qualified immunity would be premature and must be resolved on a more fully developed factual record, as must his claim that he is qualifiedly immune from Carol Moran's claim that he used excessive force in effectuating her arrest.

The Complaint further alleges that Stratton violated Carol Moran's right to be free from unreasonable searches when he insisted on remaining present while she was examined at the hospital. Stratton cites Doe v. Sheriff of DuPage County, 128 F.3d 586, 588 (7th Cir. 1997) for the proposition that a person seized with probable cause is not entitled to any special treatment by the police upon her custodial delivery to the hospital. Again, however, this assumes that there was probable cause to arrest Carol Moran, which is a finding that the Court cannot make on the undeveloped factual record that exists at this early stage of the litigation. Stratton's Motion to Dismiss is therefore denied.

IV.   Chief Settingsgaard and Parsons

The Complaint alleges that Settingsgaard is the policy making agent of the City for police practices and that Parsons, the City's Director of Human Resources, is the policy making agent of the City for personnel policy including the medical and rehabilitation treatment of police officers for on the job injuries and disabilities. Specifically, the Morans contend that Settingsgaard ratified the deprivation of Carol Moran's Fourth Amendment rights by approving Hlavacek's investigation report exonerating the officers and ratified Larson's refusal to respond to the Morans' call for assistance to prevent further trespass and destruction of their property by the Densons. The Morans further allege that Settingsgaard's ratification became the policy of the City. With respect to Parsons, the Complaint alleges that Parsons informed Thomas Moran's supervisor, Dr. William Scott, that Moran was not to be allowed to treat City of Peoria police officers because of his pending complaint against Officers Stratton, Esser, and Johnson.

These Defendants first argue that because they are sued for actions allegedly taken by them as final policy makers for the City, it necessarily follows that they are sued in their official capacities rather than their individual capacities as indicated in the Complaint. The Morans flatly deny that either Settingsgaard or Parsons are sued in their official capacities, which would be redundant since the City itself is also a named party in this case for purposes of municipal liability under Monell. Moreover, the Court notes that the allegations of the Complaint could also be consistent with Settingsgaard and/or Parsons' individual liability, as individual liability can be premised on a situation where "[a] supervisor personally devised a deliberately indifferent policy that caused a

14

constitutional injury" or where he or she faciliates, approves, or condones impermissible conduct by others.  <u>Armstrong v. Squadrito</u>, 153 F.3d 564, 581 (7th Cir. 1998); <u>Jones</u>, 856 F.2d at 992.

The Motion to Dismiss assumes that the claims against Settingsgaard and Parsons are brought in their official capacity and does not attempt to address the propriety of any individual capacity claims asserted against them.  Accordingly, a determination of the personal liability of Settingsgaard and Parsons is not before the Court and would be premature in any event.

Settingsgaard and Parsons then maintain that they must be dismissed in their official capacities because they are not final policy makers for the City based on the provisions of the City Code.  However, Settingsgaard and Parsons are not sued in their official capacities.  Assuming that this argument is directed against the claim against the City based on the actions of Settingsgaard and Parsons, the Morans note that this argument fails to address the custom of delegation of policy making authority or recognize the legal reality that all well pled facts in the Complaint must be accepted as true at this stage of the litigation.

At this stage of the litigation, the Court must agree with the Morans.  Any determination of whether the City can be found liable as a result of a delegation of policy making authority to Settingsgaard or Parsons or based on their actual exercise of policy making authority is a fact-based inquiry that would not be appropriate on a motion to dismiss.  Whether the City is liable depends on whether the Morans' rights were violated by an express policy of the City, a widespread practice "so permanent and well-settled as to constitute a custom or usage within the force of law," or a person with final

policy making authority.  <u>Billings v. Madison Metropolitan School Dist.</u>, 259 F.3d 807, 816 (7th Cir. 2001).  Furthermore, even if Settingsgaard and Parsons lacked final policy making authority, the City could still be liable if their actions evidence an express policy by the City or a widespread practice or if their actions were ratified by the City.  <u>Baskins v. City of DesPlaines</u>, 138 F.3d 701, 705 (7th Cir. 1998).  Accordingly, the question of whether Settingsgaard and Parsons had final policymaking authority is not dispositive of the municipal liability claim asserted against the City, and the Motion to Dismiss must be denied.

## **CONCLUSION**

For the reasons set forth above, Sergeant Hlavacek's Motion to Dismiss [#15] is GRANTED, and the Motions to Dismiss by the Densons [#9], Officer Stratton [#18], and Chief Settingsgaard and Parsons [#3] are DENIED.  This matter is REFERRED to the Magistrate Judge for further proceedings.

ENTERED this 10th day of April, 2008.

                                                    s/ Michael M. Mihm  
                                                  Michael M. Mihm  
                                                  United States District Judge